1  ANDRÉ BIROTTE JR.
   United States Attorney
2  DOUGLAS F. McCORMICK
   Assistant United States Attorney
3  ~~Acting Chief, Santa Ana Branch Office~~
   JEANNIE M. JOSEPH (Cal. State Bar No.: 180399)
4  Assistant United States Attorney
        Ronald Reagan Federal Bldg. & U.S. Dist. Courthouse
5       411 W. 4th St., Suite 8000
        Santa Ana, California 92701
6       Telephone: (714) 338-3576
        Facsimile: (714) 338-3708
7       E-mail: jeannie.joseph@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,    ) SA CR No. 10 **SA CR 10-0080**
                                 )
14             Plaintiff,        ) <u>PLEA AGREEMENT FOR DEFENDANT</u>
                                 ) <u>GLEN R. JUSTICE</u>
15        v.                     )
                                 )
16  GLEN R. JUSTICE,             )
                                 )
17             Defendant.        )
                                 )
18  _____      )

19

20      1.  This constitutes the plea agreement between GLEN R.

21  JUSTICE ("defendant") and the United States Attorney's Office for

22  the Central District of California ("the USAO") in the above-

23  captioned case.  This agreement is limited to the USAO and cannot

24  bind any other federal, state, or local prosecuting,

25  administrative, or regulatory authorities.

26                            <u>PLEA</u>

27      2.  Defendant gives up the right to indictment by a grand

28  jury and agrees to plead guilty to a five-count information in

the form attached to this agreement or a substantially similar
form.

NATURE OF THE OFFENSES

3.   In order for defendant to be guilty of counts one
through five, each of which charges health care fraud in
violation of Title 18, United States Code, Sections 2 and 1347,
the following must be true:  (1) the defendant knowingly and
willfully devised or participated in a scheme to defraud a health
care benefit program; (2) the statements made or facts omitted as
part of the scheme were material; (3) the defendant acted with
the intent to defraud; and (4) the scheme involved the delivery
of or payment for health care benefits, items or services.
Defendant admits that defendant is, in fact, guilty of these
offenses as described in counts one through five of the
information.

PENALTIES AND RESTITUTION

4.   The statutory maximum sentence that the Court can impose
for each violation of Title 18, United States Code, Sections 2
and 1347, is:  10 years imprisonment; a three-year period of
supervised release; a fine of $250,000 or twice the gross gain or
gross loss resulting from the offense, whichever is greatest; and
a mandatory special assessment of $100.

5.   Therefore, the total maximum sentence for all offenses
to which defendant is pleading guilty is:  50 years imprisonment;
a three-year period of supervised release; a fine of $1,250,000
or twice the gross gain or gross loss resulting from the
offenses, whichever is greatest; and a mandatory special

2

1  assessment of $500.

2     6.  Defendant understands that defendant will be required to

3  pay full restitution to the victims of the offenses.  Defendant

4  agrees that, in return for the USAO's compliance with its

5  obligations under this agreement, the amount of restitution is

6  not restricted to the amounts alleged in the counts to which

7  defendant is pleading guilty and may include losses arising from

8  counts dismissed and charges not prosecuted pursuant to this

9  agreement, as well as all relevant conduct in connection with

10  those counts and charges.  The parties currently believe that the

11  applicable amount of criminal restitution is between $400,000 and

12  $1,000,000, but recognize and agree that this amount could change

13  based on facts that come to the attention of the parties prior to

14  sentencing.  Further, the amount paid by defendant in criminal

15  restitution to any federally-funded health care benefit programs,

16  such as Medicare, Tricare, and carriers contracted with the

17  federal government through the Federal Employee Health Benefit

18  Program, shall be credited against and shall reduce, by an amount

19  equal to the amount of the restitution payment, the defendant's

20  obligation to pay any civil settlement in connection with this

21  matter.  Similarly, the amount paid by defendant in any civil

22  settlement shall be credited against and shall reduce, by an

23  amount equal to the amount of the civil settlement payment, the

24  defendant's obligation to pay any criminal restitution to

25  federally-funded health care benefit programs, such as Medicare,

26  Tricare, and carriers contracted with the federal government

27  through the Federal Employee Health Benefit Program in connection

28  with this matter.  This agreement shall not prejudice or restrict

3

1   the government's right to plead and prove, in any civil action in

2   connection with this matter, that the government sustained losses

3   in excess of $1,000,000.   Defendant agrees to make restitution at

4   or before the time of sentencing.   Defendant further agrees that

5   defendant will not seek the discharge of any restitution

6   obligation, in whole or in part, in any present or future

7   bankruptcy proceeding.

8       7.   Supervised release is a period of time following

9   imprisonment during which defendant will be subject to various

10  restrictions and requirements.   Defendant understands that if

11  defendant violates one or more of the conditions of any

12  supervised release imposed, defendant may be returned to prison

13  for all or part of the term of supervised release, which could

14  result in defendant serving a total term of imprisonment greater

15  than the statutory maximum stated above.

16      8.   Defendant also understands that, by pleading guilty,

17  defendant may be giving up valuable government benefits and

18  valuable civic rights, such as the right to vote, the right to

19  possess a firearm, the right to hold office, and the right to

20  serve on a jury.

21      9.   Defendant further understands that the conviction in

22  this case may subject defendant to various collateral

23  consequences, including but not limited to deportation,

24  revocation of probation, parole, or supervised release in another

25  case, suspension or revocation of a professional license, and

26  suspension or revocation of defendant's provider status with

27  federally-funded and private health care benefit programs,

28  including but not limited to Medicare, Tricare, and carriers

4

1  contracted with the federal government through the Federal

2  Employee Health Benefit Program ("FEHBP").  Defendant understands

3  that unanticipated collateral consequences will not serve as

4  grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

6      10.  Defendant and the USAO agree and stipulate to the

7  statement of facts provided below.  This statement of facts is

8  sufficient to support pleas of guilty to the charges described in

9  this agreement and to establish the sentencing guideline factors

10  set forth in paragraph 13 below.  It is not meant to be a

11  complete recitation of all facts relevant to the underlying

12  criminal conduct or all facts known to either party that relate

13  to that conduct.

14      Beginning on a date unknown, but no later than in or around

15  2004, and continuing through at least in or around October 2009,

16  in Orange County, California, defendant knowingly and willfully

17  devised and executed a scheme to defraud federally-funded and

18  private health care benefit programs, including but not limited

19  to Medicare, Tricare, carriers contracted with the federal

20  government through the Federal Employee Health Benefit Program,

21  and Blue Cross and Blue Shield of California (collectively

22  "Health Care Benefit Programs" or "HCBPs").

23      Defendant was a licensed physician, who owned and operated a

24  medical practice called Pacific Coast Hematology/Oncology Medical

25  Group, Inc. ("PCHOMG"), located at 11190 Warner Avenue #300,

26  Fountain Valley, California.  Defendant also was a provider with

27  numerous HCBPs.  As part of the scheme, defendant knowingly and

28  willfully submitted, and caused to be submitted, false and

5

fraudulent claims to HCBPs for the following injectable

medications relating to cancer treatment:  Neulasta (CPT Codes

~~Q4503 and J2505), Neupogen (CPT Codes J1440 and J1441),~~

Procrit/Epogen/Aranesp (CPT Codes Q0137 and J0880), and Neumega

(CPT Codes J2352 and J2355)(collectively "Injectable

Medications").  Specifically, defendant billed patients' HCBPs

for Injectable Medications knowing that those Injectable

Medications never were provided to the patients, or billed

patients' HCBPs for more expensive Injectable Medications when

less expensive Injectable Medications were provided, _i.e._,

"upcoding."  Defendant did this despite being advised by staff

not to do so, and subsequent to execution of a search warrant at

his medical practice in November 2006.

    The following are five of numerous false and fraudulent

claims that defendant intentionally, knowingly, and willfully

caused to be submitted to and paid by HCBPs for Injectable

Medications that were not provided or were "upcoded":

| | | | | | |
|---|---|---|---|---|---|
| 1 | Medicare | TA | 3/8/05 | $1,819.14 | 1105069152750 |
| 2 | Medicare | MB | 2/11/05 | $1,819.14 | 1105045332740 |
| 3 | Medicare | CC | 9/15/05 | $494.44 | 1105258413130 |
| 4 | Blue Shield of California | AL | 5/15/09 | $2,217.21 | 026091411141300 |
| 5 | Blue Cross of California | MM | 6/14/05 | $2,471.84 | 05171604046 |

1    As a result of defendant's scheme to defraud, HCBPs suffered

2    losses between $400,000 and $1,000,000.

3                    WAIVER OF CONSTITUTIONAL RIGHTS

4        11.  By pleading guilty, defendant gives up the following

5    rights:

6              a) The right to persist in a plea of not guilty.

7              b) The right to a speedy and public trial by jury.

8              c) The right to the assistance of legal counsel at

9    trial, including the right to have the Court appoint counsel for

10   defendant for the purpose of representation at trial.  (In this

11   regard, defendant understands that, despite his pleas of guilty,

12   he retains the right to be represented by counsel -- and, if

13   necessary, to have the court appoint counsel if defendant cannot

14   afford counsel -- at every other stage of the proceeding.)

15             d) The right to be presumed innocent and to have the

16   burden of proof placed on the government to prove defendant guilty

17   beyond a reasonable doubt.

18             e) The right to confront and cross-examine witnesses

19   against defendant.

20             f) The right, if defendant wished, to testify on

21   defendant's own behalf and present evidence in opposition to the

22   charges, including the right to call witnesses and to subpoena

23   those witnesses to testify.

24             g) The right not to be compelled to testify, and, if

25   defendant chose not to testify or present evidence, to have that

26   choice not be used against defendant.

27       By pleading guilty, defendant also gives up any and all

28   rights to pursue any affirmative defenses, Fourth Amendment or

                                    7

1  Fifth Amendment claims, and other pretrial motions that have been
2  filed or could be filed.

3                          SENTENCING FACTORS

4      12.  Defendant understands that the Court is required to
5  consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),
6  including the kinds of sentence and sentencing range established
7  under the United States Sentencing Guidelines ("U.S.S.G." or
8  "Sentencing Guidelines"), in determining defendant's sentence.
9  Defendant further understands that the Sentencing Guidelines are
10 advisory only, and that after considering the Sentencing
11 Guidelines and the other § 3553(a) factors, the Court may be free
12 to exercise its discretion to impose any reasonable sentence up to
13 the maximum set by statute for the crimes of conviction.

14     13.  Defendant and the USAO agree and stipulate to the
15 following applicable Sentencing Guidelines factors:

16     <u>Base Offense Level</u> :      __6__     [U.S.S.G. § 2B1.1(a)(2)]

17     <u>Specific Offense
       Characteristics</u>
18     Losses between        :      _+14__     [U.S.S.G.
       $400,000-$1,000,000                     §  2B1.1(B)(1)(H)]
19
       <u>Adjustments</u>
20     Abuse of position     :      __+2__     [U.S.S.G. § 3B1.3]
       of trust
21

22 The USAO will agree to a downward adjustment for acceptance of
23 responsibility (and, if applicable, move for an additional level
24 under § 3E1.1(b)) only if the conditions set forth in paragraph
25 19(d)) are met.  Subject to paragraph 16, defendant and the USAO
26 agree not to seek, argue, or suggest in any way, either orally or
27 in writing, that any other specific offense characteristics or
28 adjustments relating to the applicable Offense Level be imposed.

                                  8

1  If, however, after signing this agreement but prior to sentencing,

2  defendant were to commit an act, or the USAO were to discover a

3  ~~previously undiscovered act committed by defendant prior to~~

4  signing this agreement, which act, in the judgment of the USAO,

5  constituted obstruction of justice within the meaning of U.S.S.G.

6  § 3C1.1, the USAO would be free to seek the enhancement set forth

7  in that section.  Defendant and the USAO reserve the right to

8  argue that departures under the Sentencing Guidelines are

9  appropriate.

10     14.   There is no agreement as to defendant's criminal history

11  or criminal history category.

12     15.   Defendant and the USAO, pursuant to the factors set

13  forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and

14  (a)(7), further reserve the right to argue for a sentence outside

15  the sentencing range established by the Sentencing Guidelines.

16     16.   The stipulations in this agreement do not bind either

17  the United States Probation Office or the Court.  Both defendant

18  and the USAO are free to: (a) supplement the facts by supplying

19  relevant information to the United States Probation Office and the

20  Court, (b) correct any and all factual misstatements relating to

21  the calculation of the sentence, and (c) argue on appeal and

22  collateral review that the Court's Sentencing Guidelines

23  calculations are not error, although each party agrees to maintain

24  its view that the calculations in paragraph 13 are consistent with

25  the facts of this case.

<u>DEFENDANT'S OBLIGATIONS</u>

26

27     17.   Defendant agrees that he will:

28         a) Plead guilty as set forth in this agreement.

9

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessments at or before the time of sentencing unless defendant lacks the ability to pay and submits a completed financial statement (form OBD-500) to the USAO prior to sentencing.

18. Defendant further agrees:

a) That any failure to provide a full and complete financial disclosure of defendant's assets to the United States Probation Office will constitute a breach of this agreement; and

b) To prevent the disbursement of monies and assets, except reasonable living, legal, and business expenses, and the sale of assets for the purpose of setting aside the proceeds for payment of any criminal restitution or civil settlement, if such disbursements are within defendant's direct or indirect control until time of sentencing.

/ / /

/ / /

THE USAO'S OBLIGATIONS

19. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) At the time of sentencing to move to dismiss the remaining counts of the information as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

c) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute defendant for violations of federal law arising out of defendant's submission of fraudulent claims to HCBPs from January 2002 through March 2010 that are of a type or nature presently known to the government. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where the sentence should fall within that range, the propriety and extent of any departure from that range, and the determination of the sentence to be imposed after consideration of the sentencing

11

1   guidelines and all other relevant factors.

2          d) At the time of sentencing, provided that defendant

3   demonstrates an acceptance of responsibility for the offenses up

4   to and including the time of sentencing, to recommend a two-level

5   reduction in the applicable sentencing guideline offense level,

6   pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

7   move for an additional one-level reduction if available under that

8   section.

9          e) To recommend that defendant be sentenced to

10  probation, which may include a period of community confinement,

11  home detention, or community service.  However, if the Court does

12  not follow the government's recommendation and imposes a sentence

13  of imprisonment, defendant cannot for that reason withdraw his

14  guilty pleas.

15         f) Not to seek a fine in the event defendant enters into

16  a civil settlement with the government in connection with this

17  matter.

18                      BREACH OF AGREEMENT

19     20.  If defendant, at any time after the execution of this

20  agreement, knowingly violates or fails to perform any of

21  defendant's agreements or obligations under this agreement ("a

22  breach"), the USAO may declare this agreement breached.  If the

23  USAO declares this agreement breached at any time following its

24  execution, and the Court finds such a breach to have occurred,

25  then: (a) if defendant has previously entered guilty pleas,

26  defendant will not be able to withdraw the guilty pleas, and (b)

27  the USAO will be relieved of all of its obligations under this

28  agreement.

                            12

21.   Following the Court's finding of a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c) Defendant agrees that:  (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the stipulated factual basis statement in this agreement; and (iii) any evidence derived from such statements, are admissible against defendant in any such prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

<u>LIMITED MUTUAL WAIVER OF APPEAL</u>

22.   Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the

13

1  sentence is within the statutory maximum specified above and is

2  constitutional, and (b) the Court imposes a sentence within or

3  below the range corresponding to a total offense level of 19, and

4  the applicable criminal history category as determined by the

5  Court.   Notwithstanding the foregoing, defendant retains any

6  ability defendant has to appeal the Court's determination of

7  defendant's criminal history category and the conditions of

8  probation or supervised release imposed by the Court, with the

9  exception of the following:   conditions set forth in General

10  Orders 318, 01-05, and/or 05-02 of this Court; the drug testing

11  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and

12  the alcohol and drug use conditions authorized by 18 U.S.C.

13  § 3563(b)(7).

14      23.   The USAO gives up its right to appeal the sentence,

15  provided that (a) the sentence is within the statutory maximum

16  specified above and is constitutional, and (b) the Court imposes a

17  sentence within or above the range corresponding to a total

18  offense level of 19, and the applicable criminal history category

19  as determined by the Court.

20            RESULT OF VACATUR, REVERSAL OR SET-ASIDE

21      24.   Defendant agrees that if any count of conviction is

22  vacated, reversed, or set aside, the USAO may: (a) ask the Court

23  to re-sentence defendant on any remaining counts of conviction,

24  with both the USAO and defendant being released from any

25  stipulations regarding sentencing contained in this agreement, (b)

26  ask the Court to void the entire plea agreement and vacate

27  defendant's guilty pleas on any remaining counts of conviction,

28  with both the USAO and defendant being released from all of their

14

1  obligations under this agreement, or (c) leave defendant's

2  remaining convictions, sentence, and plea agreement intact.

3  ~~Defendant agrees that the choice among these three options rests~~

4  in the exclusive discretion of the USAO.

### COURT NOT A PARTY

6     25.   The Court is not a party to this agreement and need not

7  accept any of the USAO's sentencing recommendations or the

8  parties' stipulations.   Even if the Court ignores any sentencing

9  recommendation, finds facts or reaches conclusions different from

10  any stipulation, and/or imposes any sentence up to the maximum

11  established by statute, defendant cannot, for that reason,

12  withdraw defendant's guilty pleas, and defendant will remain bound

13  to fulfill all defendant's obligations under this agreement.   No

14  one -- not the prosecutor, defendant's attorney, or the Court --

15  can make a binding prediction or promise regarding the sentence

16  defendant will receive, except that it will be within the

17  statutory maximum.

### NO ADDITIONAL AGREEMENTS

19     26.   Except as set forth herein, there are no promises,

20  understandings or agreements between the USAO and defendant or

21  defendant's counsel.   Nor may any additional agreement,

22  understanding or condition be entered into unless in a writing

23  signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25     27.   The parties agree and stipulate that this Agreement will

26  be considered part of the record of defendant's guilty plea

27  hearing as if the entire Agreement had been read into the record

28  of the proceeding.

1    This agreement is effective upon signature by defendant and

2 an Assistant United States Attorney.

3 AGREED AND ACCEPTED

4 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF CALIFORNIA
5
  ANDRÉ BIROTTE JR.
6 United States Attorney

7    _____          3/15/10
                                       _____
  JEANNIE M. JOSEPH                    Date
8 Assistant United States Attorney

9    I have read this agreement and carefully discussed every part

10 of it with my attorney.  I understand the terms of this agreement,

11 and I voluntarily agree to those terms.  My attorney has advised

12 me of my rights, of possible defenses, of the sentencing factors

13 set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing

14 Guidelines provisions, and of the consequences of entering into

15 this agreement.  No promises or inducements have been given to me

16 other than those contained in this agreement.  No one has

17 threatened or forced me in any way to enter into this agreement.

18 Finally, I am satisfied with the representation of my attorney in

19 this matter.

20    _____          3/15/10
                                       _____
  GLEN R. JUSTICE                      Date
21 Defendant

22

23    I am defendant GLEN R. JUSTICE's attorney.  I have carefully

24 discussed every part of this agreement with my client.  Further, I

25 have fully advised my client of his rights, of possible defenses,

26 of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the

27 relevant Sentencing Guidelines provisions, and of the consequences

28 of entering into this agreement.  To my knowledge, my client's

1  decision to enter into this agreement is an informed and voluntary

2  one.

3  _____          3-15-10
   DAVID WIECHERT                     Date

4  Counsel for Defendant
   GLEN R. JUSTICE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6

7          UNITED STATES DISTRICT COURT

8      FOR THE CENTRAL DISTRICT OF CALIFORNIA

9             SOUTHERN DIVISION

10

11  UNITED STATES OF AMERICA,    )   SA CR No. 10-
                                 )
12              Plaintiff,       )   I N F O R M A T I O N
                                 )
13              v.               )   [18 U.S.C. § 1347: Health Care
                                 )   Fraud; 18 U.S.C. § 2: Aiding
14  GLEN R. JUSTICE,             )   and Abetting/Causing an Act to
                                 )   be Done]
15              Defendant.       )
                                 )
16                               )
                                 )
17  _____)

18      The United States Attorney alleges:

19             COUNTS ONE THROUGH FIVE

20            [18 U.S.C. §§ 2, 1347]

21  A.   INTRODUCTION

22      At all times relevant to this Information:

23      1.   Defendant GLEN R. JUSTICE ("defendant") was a physician

24  who owned and operated a medical practice called Pacific Coast

25  Hematology/Oncology Medical Group, Inc., located at 11190 Warner

26  Avenue #300, Fountain Valley, California.

27      2.   Defendant further was enrolled as a provider with

28  federally-funded and private health care benefit programs,

1 including, but not limited to, Medicare, Tricare, carriers

2 contracted with the federal government through the Federal

3 Employee Health Benefit Program, and Blue Cross and Blue Shield

4 of California (collectively, "Health Care Benefit Programs" or

5 "HCBPs").

6      3.    Defendant billed HCBPs for injectable medications

7 relating to cancer treatment, including, but not limited to,

8 Neulasta (CPT Codes Q4503 and J2505), Neupogen (CPT Codes J1440

9 and J1441), Procrit/Epogen/Aranesp (CPT Codes Q0137 and J0880),

10 and Neumega (CPT Codes J2352 and J2355)(collectively, "Injectable

11 Medications").

12 B.    THE FRAUDULENT SCHEME

13      4.    Beginning on a date unknown, but at least since in or

14 around 2002, and continuing through at least in or around October

15 2009, in Orange County, within the Central District of

16 California, and elsewhere, defendant, together with others known

17 and unknown to the United States Attorney, aiding and abetting

18 each other, knowingly, willfully, and with the intent to defraud,

19 devised and executed a scheme and artifice:  (a) to defraud HCBPs

20 as to material matters in connection with the delivery of and

21 payment for health care benefits, items, and services; and (b) to

22 obtain money from HCBPs by means of material false and fraudulent

23 pretenses and representations and the concealment of material

24 facts in connection with the delivery of and payment for health

25 care benefits, items, and services.

26 C.    MEANS TO ACCOMPLICE THE FRAUDULENT SCHEME

27      5.    The fraudulent scheme operated, in substance, in the

28 following manner:

1       a.   Defendant, together with others known and unknown

2   to the United States Attorney, aiding and abetting each other,

3   and acting with intent to defraud and deceive, knowingly and

4   willfully caused false information and false statements to be

5   communicated, and material information to be concealed and

6   omitted, in billings to HCBPs, including, without limitation:

7           (i)  Representing that Injectable Medications were

8   provided to patients when, in fact, no such Injectable

9   Medications were provided; and

10          (ii) Representing that more expensive Injectable

11  Medications were provided when, in fact, less expensive

12  Injectable Medications were provided, *i.e*, "upcoding."

13      b.   Defendant, together with others known and unknown

14  to the United States Attorney, and acting with intent to defraud

15  and deceive, knowingly and willfully caused, aided and abetted,

16  and engaged in fraudulent and deceptive acts, practices, and

17  devices including, without limitation:

18          (i)  Causing HCBPs to be billed for Injectable

19  Medications when, in fact, no such Injectable Medications were

20  provided; and

21          (ii) Causing HCBPs to be billed for more expensive

22  Injectable Medications when, in fact, less expensive Injectable

23  Medications were provided, *i.e.*, "upcoding."

24  6.  At the time defendant made the false statements and

25  caused them to be made, concealed and omitted material

26  information and caused such information to be concealed and

27  omitted, and caused, aided and abetted, and engaged in the

28  fraudulent acts, practices, and devices set forth above,

3

1  defendant knew that said statements were false, that material
2  information was concealed and omitted, and that the subject acts,
3  practices, and devises were fraudulent, unlawful, and deceptive.
4  In particular, defendant knew the following:
5      a.   That defendant was not allowed to bill HCBPs for
6  services that were not provided; and
7      b.   That defendant was not allowed to "upcode" the
8  type of service provided to obtain a greater reimbursement from
9  HCBPs.
10     7.   In carrying out the scheme, acting with intent to
11 defraud and deceive, defendant concealed and failed to disclose
12 to HCBPs the true facts about his fraudulent business practices
13 regarding the delivery of and payment for Injectable Medications.
14 Such concealed and omitted facts were material in that, had the
15 HCBPs known the true facts, they would not have paid for the
16 Injectable Medications defendant billed that were not provided.
17 D.   RESULTS OF THE FRAUDULENT SCHEME
18     8.   By devising and executing the fraudulent scheme,
19 defendant caused losses to HCBPs of between $400,000 and
20 $1,000,000.
21 E.   EXECUTION OF THE FRAUDULENT SCHEME
22     9.   On or about the dates set forth below, within the
23 Central District of California, and elsewhere, defendant,
24 together with others known and unknown to the United States
25 Attorney, aiding and abetting each other, for the purpose of
26 executing and attempting to execute the scheme to defraud
27 described above, knowingly and willfully caused to be submitted
28 to the indicated HCBPs the following false and fraudulent claims:

| Count | HCIT | Benficiary Initials | Date Claim Submitted | Amount Paid | Claim Number |
|-------|------|------|------|------|------|
| 1 | Medicare | TA | 3/8/05 | $1,819.14 | 1105069152750 |
| 2 | Medicare | MB | 2/11/05 | $1,819.14 | 1105045332740 |
| 3 | Medicare | CC | 9/15/05 | $489.44 | 1105258413130 |
| 4 | Blue Shield of California | AL | 5/15/09 | $2,217.21 | 026091411141300 |
| 5 | Blue Cross of California | MM | 6/14/05 | $2,471.84 | 05171604046 |

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division


DOUGLAS F. McCORMICK
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

JEANNIE M. JOSEPH
Assistant United States Attorney

5