1  ANDRÉ BIROTTE JR.
   United States Attorney
2  DENNISE D. WILLETT
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   JEANNIE M. JOSEPH (Cal. State Bar No.: 180399)
4  Assistant United States Attorney
        Ronald Reagan Federal Bldg. & U.S. Dist. Courthouse
5       411 W. 4th St., Suite 8000
        Santa Ana, California 92701
6       Telephone: (714) 338-3576
        Facsimile: (714) 338-3708
7       E-mail: jeannie.joseph@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9

10               UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                    SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,      ) SA CR No. 10-80-CJC
                                   )
14            Plaintiff,           ) GOVERNMENT'S POSITION WITH
                                   ) RESPECT TO PRESENTENCE REPORT
15            v.                   ) AND SENTENCING BRIEF REGARDING
                                   ) DEFENDANT GLEN R. JUSTICE
16  GLEN R. JUSTICE,               )
                                   ) Sentencing Date:  2/28/11
17            Defendant.           ) Sentencing Time:  10:00 a.m.
                                   )
18  _____)

19

20       Plaintiff United States of America, by and through its

21  attorney of record, Assistant United States Attorney Jeannie M.

22  Joseph (the "government"), hereby presents its position with

23  respect to the Presentence Report and Recommendation ("PSR") and

24  sentencing brief regarding defendant GLEN R. JUSTICE

25  ("defendant").

26  / / /

27  / / /

28  / / /

I.    **INTRODUCTION**

The government has no objection to and hereby adopts the factual findings and sentencing calculations contained in the PSR disclosed by the United States Probation Office ("USPO") on or about January 13, 2011.

II.    **OFFENSE CONDUCT**[1]

Beginning on a date unknown, but no later than in or around 2004, and continuing through at least in or around October 2009, in Orange County, California, defendant knowingly and willfully devised and executed a scheme to defraud federally-funded and private health care benefit programs, including but not limited to Medicare, Tricare, carriers contracted with the federal government through the Federal Employee Health Benefit Program, and Blue Cross and Blue Shield of California (collectively "Health Care Benefit Programs" or "HCBPs").

Defendant was a licensed physician, who owned and operated a medical practice called Pacific Coast Hematology/Oncology Medical Group, Inc. ("PCHOMG"), located at 11190 Warner Avenue #300, Fountain Valley, California. Defendant also was a provider with numerous HCBPs. As part of the scheme, defendant knowingly and willfully submitted, and caused to be submitted, false and fraudulent claims to HCBPs for the following injectable medications relating to cancer treatment: Neulasta (CPT Codes Q4503 and J2505), Neupogen (CPT Codes J1440 and J1441), Procrit/Epogen/Aranesp (CPT Codes Q0137 and J0880), and Neumega

---

[1] This is the factual basis defendant stipulated to in his plea agreement. (Plea Agreement, ¶ 10.)

(CPT Codes J2352 and J2355)(collectively "Injectable Medications").  Specifically, defendant billed patients' HCBPs for Injectable Medications knowing that those Injectable Medications never were provided to the patients, or billed patients' HCBPs for more expensive Injectable Medications when less expensive Injectable Medications were provided, *i.e.*, "upcoding."  Defendant did this despite being advised by staff not to do so, and subsequent to execution of a search warrant at his medical practice in November 2006.

The following are five of numerous false and fraudulent claims that defendant intentionally, knowingly, and willfully caused to be submitted to and paid by HCBPs for Injectable Medications that were not provided or were "upcoded":

| Count | HCBP | Patient Initials | Date Claim Submitted | Amount Paid | Claim Number |
|-------|------|------------------|----------------------|-------------|--------------|
| 1 | Medicare | TA | 3/8/05 | $1,819.14 | 1105069152750 |
| 2 | Medicare | MB | 2/11/05 | $1,819.14 | 1105045332740 |
| 3 | Medicare | CC | 9/15/05 | $494.44 | 1105258413130 |
| 4 | Blue Shield of California | AL | 5/15/09 | $2,217.21 | 026091411141300 |
| 5 | Blue Cross of California | MM | 6/14/05 | $2,471.84 | 05171604046 |

As a result of defendant's scheme to defraud, HCBPs suffered losses between $400,000 and $1,000,000.

III. **GUIDELINES CALCULATIONS**

The parties stipulated to the following offense level calculation under the Guidelines:

|  |  |  |  |
|---|---|---|---|
| <u>Base Offense Level</u> | : | 6 | [U.S.S.G. § 2B1.1(a)(2)] |
| <u>Specific Offense Characteristics</u> | | | |
| Losses between $400,000-$1M | : | +14 | [U.S.S.G. § 2B1.1(b)(1)(H)] |
| <u>Adjustments</u> | | | |
| Abuse of position of trust | : | +2 | [U.S.S.G. § 3B1.3] |
| Acceptance of responsibility | : | -3 | [U.S.S.G. § 3E.1] |
| <u>Total</u> | : | 19 | |

(Plea Agreement, ¶ 13.)  Further, defendant and the USAO agreed not to seek, argue, or suggest in any way that any other specific offense characteristics or adjustments be imposed.  (<u>Id.</u>)  However, the parties left open the ability to argue for departures.  (Id.)  Further, the government agreed to recommend a probationary sentencing.  (<u>Id.</u> at ¶ 19(e).)  However, the government reserved it's right to argue for an obstruction of justice enhancement for misconduct that occurred between defendant's signing of the plea agreement and sentencing.  (<u>Id.</u> at ¶ 13.)  Finally, the government is freed from it's obligations under the plea agreement upon the Court's finding of a breach by defendant (<u>id.</u> at ¶ 20), including the commission of another crime (<u>id.</u> at ¶ 17(d)).

The PSR calculates defendant's offense level in the same manner as the government.  At criminal history category I, this provides a sentencing range of 30-37 months imprisonment, and the PSR recommends a sentence of:  24 months imprisonment; restitution to be determined at a separate hearing with 90 days (by April 11, 2011); a fine of $60,000; and a special assessment of $500 due immediately.

IV.  **POST-PLEA MISCONDUCT**

Defendant signed his plea agreement on March 15, 2010.
Defendant continued to operate and manage PCHOMG until on or about
April 2010.  Between March and April 2010, defendant continued to
bill health insurances for Injectable Medications that were not
provided.

Specifically, Dr. Jacoub was a physician that worked at
PCHOMG from approximately August 2006 to April 2010.  Dr. Jacoub
would testify that after the search warrant in November 2006,
defendant told him and the other staff at PCHOMG that the search
was due to a misunderstanding and there were no criminal issues.
From March 25-28, 2010, Dr. Jacoub accessed the billing at PCHOMG
and discovered multiple patients of his that had Injectable
Medications, primarily Neulasta, added to the billing, but which
the patients did not receive.  This included:

• Neulasta charges for patient M.E.1 for dates of service
  2/2/10, 2/19/10, 2/24/10, 3/3/10, and 3/22/10;

• a Neulasta charge for patient T.T. for date of service
  3/12/10;

• a Neulasta charge for patient M.E.2 for date of service
  3/19/10;

• Neulasta charges for patient J.H. for dates of service 3/3/10
  and 3/17/10;

• a Neulasta charge to BC/BS for patient N.K. for date of
  service 3/17/10; and

• Neulasta charges to BC/BS for patient J.M. for dates of
  service 3/8/10 and 3/19/10.

(See report of interview of Dr. Jack F. Jacoub, Exhibit 1.)[2]  As
can be seen, many of these dates post-date defendant's signing of

_____

[2] Exhibits will be filed separately, with redactions, to
protect patient privacy.

1   the plea agreement.

2        On Monday, May 29, 2010, defendant confronted Dr. Jacoub

3   about reviewing PCHOMG's billing, and defendant terminated Dr.

4   Jacoub the next day.  (Jacoub Interview Report.)  In April 2010,

5   defendant was removed from operating PCHOMG and the staff was told

6   that defendant had pleaded guilty to criminal charges.  (See

7   report of interview of Denise Thomas, Exhibit 2.)

8        Biller Denise Thomas worked at PCHOMG from May 2008 through

9   June 2010.  Thomas would testify that, sometime during the last

10  week of May, a representative for Neulasta came to PCHOMG to audit

11  Neulasta injections for the months of March and April 2010.  There

12  were eight undocumented postings for Neulasta and one posting for

13  Neulasta where documentation showed Neupogen given:

14  •    Neulasta charges to Medicare for patient G.K. for dates of
         service 3/4/10, 3/9/10, and 3/18/10;
15
16  •    Neulasta charge to Medicare for patient E.S. for date of
         service 3/5/10;

17  •    Neulasta charge to Medicare for patient J.H. for date of
         service 3/17/10;
18
19  •    Neulasta charge to Medicare for patient L.D. for date of
         service 3/2/10;

20  •    Neulasta charge to Medicare for patient F.H. for date of
         service 3/4/10;
21
22  •    Neulasta charge to Medicare and Medi-Cal for patient I.M. for
         date of service 3/4/10; and

23  •    Neulasta charge to Medicare for patient S.P. for date of
         service 3/16/10.
24

25  (Thomas Interview Report.) Again, many of these dates post-date

26  defendant's signing of the plea agreement.

27  / / /

28  / / /

6

**V.   <u>RESTITUTION</u>**

The PSR defers the determination of restitution to a further hearing before April 11, 2011, pursuant to 18 U.S.C. § 36649d)(5). In the plea agreement, the parties agreed to a total amount of restitution between $400,000 and $1,000,000, although the parties both recognized that "this amount could change based upon facts that come to the attention of the parties prior to sentencing. (Plea Agreement, ¶ 6.)  The parties further agreed that defendant would pay restitution at or before the time of sentencing, and that defendant would be credited for any amounts that he paid in any civil settlement with the government.  (<u>Id.</u>)

Nurse reviewers hired by the government to compare defendant's billing with documented medical treatment given to 52 of defendant's patients with Medicare insurance found loss - just as to these beneficiaries - to be $2,415,071.60 million.  (See Nurse Reviewer Chart, Exhibit 3.)  However, in light of the plea agreement and given a pending civil settlement, the government requests criminal restitution in the amount of $1,000,000 to Medicare.

**VI.   <u>SENTENCING RECOMMENDATION</u>**

The government initially intended to recommend - in accord with the plea agreement - that defendant be sentenced to probation.  However, in light of defendant's obstructive conduct, and should this Court find defendant breached his plea agreement, the government would request a sentence of one year and a day imprisonment.

The government initially agreed to a probationary sentence given defendant's exemplary contributions to the community as a

doctor, the fact that his clinic was not entirely fraudulent, his age, and his otherwise law-abiding life.[3]   At that time, the government believed that defendant posed little risk of committing further fraud.   However, now, given defendant's history of continuing his fraudulent billing, not only after execution of a search warrant at his office, but after he negotiated and signed a plea agreement, the government's feels that only a custodial sentence would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to defendant and other doctors who contemplate defrauding insurance companies, and protect the public from further crimes of the defendant.

If the Court determines that defendant has not breached his plea agreement, the government abides by the terms of its plea agreement and recommends a probationary sentence with community service.

Dated:   February 14, 2011        Respectfully submitted,

                                  ANDRÉ BIROTTE JR.
                                  United States Attorney

                                  DENNISE D. WILLETT
                                  Assistant United States Attorney
                                  Chief, Santa Ana Branch Office


                                  _____/S/_____
                                  JEANNIE M. JOSEPH
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  United States of America

---

[3]   The defendant's sentencing brief does an excellent job at outlining the many positive aspects of defendant's life, as well as a possible psychological reason behind defendant's repeated fraudulent actions.