ANDRÉ BIROTTE JR.
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
JEANNIE M. JOSEPH (Cal. State Bar No.: 180399)
Assistant United States Attorney
    Ronald Reagan Federal Bldg. & U.S. Dist. Courthouse
    411 W. 4th St., Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3576
    Facsimile: (714) 338-3708
    E-mail: jeannie.joseph@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GLEN R. JUSTICE,<br><br>    Defendant. | SA CR No. 10-80-CJC<br><br>**AMENDED GOVERNMENT POSITION WITH RESPECT TO PRESENTENCE REPORT AND SENTENCING BRIEF REGARDING DEFENDANT GLEN R. JUSTICE; EXHIBITS**<br><br>Sentencing Date: 2/28/11<br>Sentencing Time: 10:00 a.m. |

Plaintiff United States of America, by and through its attorney of record, Assistant United States Attorney Jeannie M. Joseph (the "government"), hereby presents its amended position with respect to the Presentence Report and Recommendation ("PSR") and sentencing brief regarding defendant GLEN R. JUSTICE ("defendant"), with attached exhibits.

/ / /

/ / /

/ / /

## I. INTRODUCTION

The government has no objection to and hereby adopts the factual findings and sentencing calculations contained in the PSR disclosed by the United States Probation Office ("USPO") on or about January 13, 2011.

## II. OFFENSE CONDUCT[1]

Beginning on a date unknown, but no later than in or around 2004, and continuing through at least in or around October 2009, in Orange County, California, defendant knowingly and willfully devised and executed a scheme to defraud federally-funded and private health care benefit programs, including but not limited to Medicare, Tricare, carriers contracted with the federal government through the Federal Employee Health Benefit Program, and Blue Cross and Blue Shield of California (collectively "Health Care Benefit Programs" or "HCBPs").

Defendant was a licensed physician, who owned and operated a medical practice called Pacific Coast Hematology/Oncology Medical Group, Inc. ("PCHOMG"), located at 11190 Warner Avenue #300, Fountain Valley, California. Defendant also was a provider with numerous HCBPs. As part of the scheme, defendant knowingly and willfully submitted, and caused to be submitted, false and fraudulent claims to HCBPs for the following injectable medications relating to cancer treatment: Neulasta (CPT Codes Q4503 and J2505), Neupogen (CPT Codes J1440 and J1441), Procrit/Epogen/Aranesp (CPT Codes Q0137 and J0880), and Neumega

---

[1] This is the factual basis defendant stipulated to in his plea agreement. (Plea Agreement, ¶ 10.)

2

(CPT Codes J2352 and J2355)(collectively "Injectable Medications"). Specifically, defendant billed patients' HCBPs for Injectable Medications knowing that those Injectable Medications never were provided to the patients, or billed patients' HCBPs for more expensive Injectable Medications when less expensive Injectable Medications were provided, i.e., "upcoding." Defendant did this despite being advised by staff not to do so, and subsequent to execution of a search warrant at his medical practice in November 2006.

The following are five of numerous false and fraudulent claims that defendant intentionally, knowingly, and willfully caused to be submitted to and paid by HCBPs for Injectable Medications that were not provided or were "upcoded":

| Count | HCBP | Patient Initials | Date Claim Submitted | Amount Paid | Claim Number |
|---|---|---|---|---|---|
| 1 | Medicare | TA | 3/8/05 | $1,819.14 | 1105069152750 |
| 2 | Medicare | MB | 2/11/05 | $1,819.14 | 1105045332740 |
| 3 | Medicare | CC | 9/15/05 | $494.44 | 1105258413130 |
| 4 | Blue Shield of California | AL | 5/15/09 | $2,217.21 | 026091411141300 |
| 5 | Blue Cross of California | MM | 6/14/05 | $2,471.84 | 05171604046 |

As a result of defendant's scheme to defraud, HCBPs suffered losses between $400,000 and $1,000,000.

**III. GUIDELINES CALCULATIONS**

The parties stipulated to the following offense level calculation under the Guidelines:

3

| | | | | |
|---|---|---|---|---|
| <u>Base Offense Level</u> | : | __6__ | [U.S.S.G. § 2B1.1(a)(2)] | |
| <u>Specific Offense Characteristics</u> | | | | |
| Losses between $400,000-$1M | : | __+14__ | [U.S.S.G. § 2B1.1(b)(1)(H)] | |
| <u>Adjustments</u> | | | | |
| Abuse of position of trust | : | __+2__ | [U.S.S.G. § 3B1.3] | |
| Acceptance of responsibility | : | __-3__ | [U.S.S.G. § 3E.1] | |
| <u>Total</u> | : | __19__ | | |

(Plea Agreement, ¶ 13.) Further, defendant and the USAO agreed not to seek, argue, or suggest in any way that any other specific offense characteristics or adjustments be imposed. (<u>Id.</u>) However, the parties left open the ability to argue for departures. (<u>Id.</u>) Further, the government agreed to recommend a probationary sentencing. (<u>Id.</u> at ¶ 19(e).) However, the government reserved it's right to argue for an obstruction of justice enhancement for misconduct that occurred between defendant's signing of the plea agreement and sentencing. (<u>Id.</u> at ¶ 13.) Finally, the government is freed from it's obligations under the plea agreement upon the Court's finding of a breach by defendant (<u>id.</u> at ¶ 20), including the commission of another crime (<u>id.</u> at ¶ 17(d)).

The PSR calculates defendant's offense level in the same manner as the government. At criminal history category I, this provides a sentencing range of 30-37 months imprisonment, and the PSR recommends a sentence of: 24 months imprisonment; restitution to be determined at a separate hearing with 90 days (by April 11, 2011); a fine of $60,000; and a special assessment of $500 due immediately.

## IV. POST-PLEA MISCONDUCT

Defendant signed his plea agreement on March 15, 2010. Defendant continued to operate and manage PCHOMG until on or about April 2010. Between March and April 2010, defendant continued to bill health insurances for Injectable Medications that were not provided.

Specifically, Dr. Jacoub was a physician that worked at PCHOMG from approximately August 2006 to April 2010. Dr. Jacoub would testify that after the search warrant in November 2006, defendant told him and the other staff at PCHOMG that the search was due to a misunderstanding and there were no criminal issues. From March 25-28, 2010, Dr. Jacoub accessed the billing at PCHOMG and discovered multiple patients of his that had Injectable Medications, primarily Neulasta, added to the billing, but which the patients did not receive. This included:

- Neulasta charges for patient M.E.1 for dates of service 2/2/10, 2/19/10, 2/24/10, 3/3/10, and 3/22/10;
- a Neulasta charge for patient T.T. for date of service 3/12/10;
- a Neulasta charge for patient M.E.2 for date of service 3/19/10;
- Neulasta charges for patient J.H. for dates of service 3/3/10 and 3/17/10;
- a Neulasta charge to BC/BS for patient N.K. for date of service 3/17/10; and
- Neulasta charges to BC/BS for patient J.M. for dates of service 3/8/10 and 3/19/10.

(See report of interview of Dr. Jack F. Jacoub, Exhibit 1.) As can be seen, many of these dates post-date defendant's signing of the plea agreement.

/ / /

On Monday, May 29, 2010, defendant confronted Dr. Jacoub about reviewing PCHOMG's billing, and Dr. Jacoub quit the next day.[2] (Jacoub Interview Report.) In April 2010, defendant was removed from operating PCHOMG and the staff was told that defendant had pleaded guilty to criminal charges. (See report of interview of Denise Thomas, Exhibit 2.)

Biller Denise Thomas worked at PCHOMG from May 2008 through June 2010. Thomas would testify that, sometime during the last week of May, a representative for Neulasta came to PCHOMG to audit Neulasta injections for the months of March and April 2010. There were eight undocumented postings for Neulasta and one posting for Neulasta where documentation showed Neupogen given:

- Neulasta charges to Medicare for patient G.K. for dates of service 3/4/10, 3/9/10, and 3/18/10;
- Neulasta charge to Medicare for patient E.S. for date of service 3/5/10;
- Neulasta charge to Medicare for patient J.H. for date of service 3/17/10;
- Neulasta charge to Medicare for patient L.D. for date of service 3/2/10;
- Neulasta charge to Medicare for patient F.H. for date of service 3/4/10;
- Neulasta charge to Medicare and Medi-Cal for patient I.M. for date of service 3/4/10; and
- Neulasta charge to Medicare for patient S.P. for date of service 3/16/10.

(Thomas Interview Report.) Again, many of these dates post-date defendant's signing of the plea agreement.

/ / /

---

[2] The government's sentencing brief is corrected to reflect that Dr. Jacoub quit on April 30, 2010, and was not fired.

6

1    Finally, Mary Ann Hall, a Physician's Assistant at PCHOMG
2 since 2005, would testify that she noted irregularities in
3 defendant's billing and was assured these would be corrected.
4 However, in early March 2010, a patient approached her complaining
5 that several medications listed on her bill were incorrect.
6 Further, on March 23, 2010, Hall discovered drugs billed for a
7 patient that she never ordered and that were not a part of the
8 patient's treatment plan.  Hall suspected fraud and quit on March
9 30, 2010.  (Hall Interview Report, Exhibit 3.)

**V.    RESTITUTION**

The PSR defers the determination of restitution to a further hearing before April 11, 2011, pursuant to 18 U.S.C. § 36649d)(5). In the plea agreement, the parties agreed to a total amount of restitution between $400,000 and $1,000,000, although the parties both recognized that "this amount could change based upon facts that come to the attention of the parties prior to sentencing. (Plea Agreement, ¶ 6.)  The parties further agreed that defendant would pay restitution at or before the time of sentencing, and that defendant would be credited for any amounts that he paid in any civil settlement with the government.  (_Id._)

Nurse reviewers hired by the government to compare defendant's billing with documented medical treatment given to 52 of defendant's patients with Medicare insurance found loss - just as to these beneficiaries - to be $2,338,303.61.[3]  (See Nurse Reviewer Chart, Exhibit 4.)  However, in light of the plea

---

[3] This number was corrected, a decrease of approximately $90,000, to give credit for medications actually given that were upcoded when billed.

7

agreement and given a pending civil settlement, the government requests criminal restitution in the amount of $1,000,000 to Medicare.

**VI. SENTENCING RECOMMENDATION**

The government initially intended to recommend - in accord with the plea agreement - that defendant be sentenced to probation. However, in light of defendant's obstructive conduct, and should this Court find defendant breached his plea agreement, the government would request a sentence of one year and a day imprisonment.

The government initially agreed to a probationary sentence given defendant's exemplary contributions to the community as a doctor, the fact that his clinic was not entirely fraudulent, his age, and his otherwise law-abiding life.[4] At that time, the government believed that defendant posed little risk of committing further fraud. However, now, given defendant's history of continuing his fraudulent billing, not only after execution of a search warrant at his office, but after he negotiated and signed a plea agreement, the government's feels that only a custodial sentence would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to defendant and other doctors who contemplate defrauding insurance companies, and protect the public from further crimes of the defendant.

/ / /

---

[4] The defendant's sentencing brief does an excellent job at outlining the many positive aspects of defendant's life, as well as a possible psychological reason behind defendant's repeated fraudulent actions.

8

If the Court determines that defendant has not breached his plea agreement, the government abides by the terms of its plea agreement and recommends a probationary sentence with community service.

Dated: February 15, 2011        Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office


_____/S/_____
JEANNIE M. JOSEPH
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

9